IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Bush Truck Leasing, Inc., : | |
| : | Case No. 1:09-cv-354 |
| Plaintiff, : | |
| : | Chief Judge Susan J. Dlott |
| v. : | |
| : | ORDER GRANTING IN PART |
| Dynamex, Inc., *et al.* : | MOTION TO DISMISS AND |
| : | GRANTING MOTION TO TRANSFER |
| Defendants. : | |

      This matter is before the Court on Defendant Office Depot, Inc.'s Motion to Dismiss (doc. 39) and Motion to Sever Claims and Transfer Venue (doc. 40).  This case arises from a set of business relationships between Plaintiff Bush Truck Leasing, Inc., Defendant Dynamex, Inc., and Defendant Office Depot, Inc.  At least between 2006–2008 the parties had a relationship in which Bush purchased Office Depot-branded delivery vehicles from Office Depot, Bush then leased the delivery vehicles to Dynamex, and Dynamex's independent contractor drivers used the vehicles to service delivery routes for Office Depot.

      Bush alleges in the Amended Complaint (doc. 24) that Dynamex and Office Depot made representations that in the event Dynamex terminated its contract with Bush: (1) Office Depot promised to buy back the Office Depot-branded delivery vehicles from Bush and (2) Dynamex promised to return the leased vehicles to Bush and to assist Office Depot in buying back the Office Depot-branded vehicles.  Bush has sued both Office Depot and Dynamex alleging that they breached their obligations to Bush.  Bush has settled its dispute with and dismissed all claims against Dynamex.  Office Depot is the only remaining Defendant.

      Office Depot now has moved to dismiss for failure to state a claim upon which relief can

be granted. Office Depot also seeks to transfer any remaining claims to the United States District Court for the Southern District of Florida.[1] For the reasons that follow, the Court will **GRANT IN PART** the Motion to Dismiss and **GRANT** the Motion to Transfer.

## I. BACKGROUND

The Court will set forth the facts alleged in the Amended Complaint by providing a timeline of the key events and allegations.[2]

### A. Master Transportation Agreement ("MTA") between Dynamex and Office Depot

On September 23, 2003, Dynamex and Office Depot entered into a Master Transportation Agreement ("MTA") (doc. 26) whereby Dynamex agreed to provide transportation-related services to Office Depot. The MTA was amended on multiple occasions: Amendment 1 in May 2005; Amendment 2 on December 15, 2005; Amendment 3 on July 31, 2006; Amendment 4 on March 5, 2007; Amendment 5 on June 6, 2008; Amendment 6 effective April 29, 2008; and Amendment 7 in March 2009. Bush alleges in the Amended Complaint that it is an intended third-party beneficiary of the MTA.

The MTA provided that any litigation arising from the MTA must be brought in the Southern District of Florida and that disputes would be governed by Florida law. Consecutively-numbered Schedule A(s) were incorporated into the MTA for each separate Office Depot

---

[1] Office Depot originally requested that the Court sever the claims against Dynamex from the claims against Office Depot. That part of the Motion to Sever Claims and Transfer Venue is moot.

[2] The Court has considered the allegations in the Amended Complaint and the contractual documents referenced therein or related to the allegations therein in ruling upon the Motion to Dismiss. The Court has not considered materials extraneous to the pleading such as declarations and emails submitted by the parties.

location or region. Bush alleges upon information and belief that many of the Schedule A(s) contained a buy-back clause which required Office Depot to buy back from Bush certain vehicles at book value if the Schedule A(s) were terminated without cause. These Schedule A(s) contained the following language:

> Vehicle Assets: Carrier [Dynamex] agrees to facilitate the required purchase of Office-Depot Sprinters through a third party company who will in turn lease the vehicles to the independent contractors serving the contract. In the event this Schedule A is terminated without cause, carrier will facilitate the sale of Office Depot-branded Sprinter and bulk trucks from the independent contractors or leasing company back to Office Depot. To that end, the third party company will include a mandatory truck buy back clause in its agreements with the independent contractors hired to service the Office Depot account. That buy back agreement will state that Office Depot will buy the trucks back at book value.

(Doc. 46-4.) Bush asserts that it is the third-party company discussed in the Schedule A(s).

**B.     Program Agreement between Bush and Dynamex**

On December 1, 2005, Bush and Dynamex entered into a Program Agreement. (Doc. 24-2.) Pursuant to the Program Agreement, Bush extended financing and/or leasing of delivery vehicles to Dynamex drivers. Dynamex agreed to facilitate the financing and/or leasing by its drivers of Bush's delivery vehicles. The Program Agreement ran for a three-year term with automatic successive one-year renewals. Dynamex was permitted to cancel the Program Agreement at any time with ninety days notice.

The Program Agreement was amended on March 22, 2006 to provide that if Dynamex terminated the Program Agreement, the terms of the Program Agreement continued for each vehicle financed prior to the effective date of the termination. (Doc. 24-3.) The Program Agreement was modified again on March 28, 2006. The so-called Office Depot Amendment to the Program Agreement provided as follows:

> Bush Transportation Systems agrees to lease vehicles to Independent Contractor's [*sic*] servicing the Dynamex-Office Depot contract. In the event that the agreement is terminated with or without cause, Bush [] will sell the Office Depot branded Sprinter and bulk trucks back to Office Depot. To that end, Bush [] will include mandatory truck buy back clause [sic] in its agreements with the Independent Contractors hired to service the Dynamex-Office Depot account. That buy-back agreement will state that Office Depot will buy the trucks back at book value.

(Doc. 24-4.)

Bush alleges that Office Depot was aware of and participated in negotiations between Bush and Dynamex leading up to the Office Depot Amendment to the Program Agreement. Bush further alleges that Office Depot wanted to be able to retain and purchase the Sprinter and bulk trucks which were subject to the Program Agreement. Bush alleges that Office Depot agreed to buy back the vehicles from Bush at book value and to include the buy-back provision in its Schedule A(s) with Dynamex. Bush alleges that it agreed to enter into the Office Depot Amendment to the Program Agreement in reliance upon Office Depot's promises and representations.

**C.     Used Vehicle Purchase Agreement ("VPA") between Office Depot and Bush**

On June 14, 2006, Office Depot and Bush entered into a Used Vehicle Purchase Agreement ("VPA"). (Doc. 39-1 at 23.) Pursuant to the VPA, Bush purchased used delivery vehicles from Office Depot. Bush did not expressly discuss the VPA in the Amended Complaint. However, Office Depot provided a copy of the VPA to the Court. The Court will consider the VPA without converting the pending motion to a motion for summary judgment because the VPA is indirectly mentioned in the Amended Complaint and it is central to the

dispute between the parties.[3]  *See Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999).

The VPA provided that it would be governed and construed pursuant to the laws of Florida.  The VPA also contained an integration clause which provided that the VPA was intended by the parties to the VPA "as the final expression of their agreement and was further intended as the complete and exclusive statement of all the terms of their agreement."  (Doc. 39-1 at 23, 26.)  The VPA does not contain a buy-back provision requiring Office Depot to repurchase the vehicles it sold to Bush.

**D.     Termination of the Program Agreement**

On May 2, 2008, Dynamex provide written notice to Bush of its intention to terminate the Program Agreement effective August 2, 2008.  Three hundred vehicles subject to the Program Agreement were returned to Bush.  Bush alleges that Dynamex drivers abandoned, took parts from, or damaged the vehicles before the vehicles were returned to Bush.  Bush alleges that it has approximately $8 million dollars in idle inventory.  Office Depot has not bought back Office Depot-branded vehicles from Bush since the termination of the Program Agreement.

**E.     MTA is Amended to Delete "Vehicle Asset" Provisions from Schedule A(s)**

At some unspecified date on or after June 6, 2008,[4] Dynamex and Office Depot amended the MTA by agreeing to delete the "Vehicle Asset" provision from applicable Schedule A(s).

---

[3] For example, the VPA is indirectly mentioned when Bush alleges that Office Depot had an obligation to "buy back" vehicles from Bush.  The VPA is the agreement by which Office Depot sold the vehicles that Bush now alleges that Office Depot must buy back.

[4] Amendment 5 to the MTA was dated June 6, 2008.  Bush asserts that Amendment 6 must have been agreed to on or after June 6, 2008.

This Amendment 6 to the MTA was given an effective date of April 29, 2008.  Bush alleges that Dynamex and Office Depot signed this Amendment 6 to the MTA after Dynamex gave Bush notice to terminate the Program Agreement, but purported to back-date Amendment 6 to be effective before Dynamex gave Bush notice of its intention to terminate the Program Agreement.

**F.    Relevant Procedural Posture**

Bush filed an Amended Complaint against Office Depot and Dynamex on December 1, 2009.  Office Depot is the only remaining defendant.  Bush asserts the following claims against Office Depot: (1) breach of the MTA, (2) promissory estoppel, (3) unjust enrichment, (4) tortious interference with contractual and business relationships, (5) fraud, (6) fraudulent inducement, and (7) civil conspiracy.  Office Depot moves to dismiss each claim stated against it and to transfer any remaining claims to the United States District Court for the Southern District of Florida.  The Court held oral argument on the pending motions on December 16, 2010.

**II.    MOTION TO DISMISS**

Office Depot moves to dismiss the claims stated against it in the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Rule 12(b)(6) allows a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A district court "must read all well-pleaded allegations of the complaint as true." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997).  However, this tenet is inapplicable to legal conclusions, or legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).

To withstand a dismissal motion, a complaint "does not need detailed factual allegations," but it must contain "more than labels and conclusions [or] a formulaic recitation of

the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The Court does not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563.

> The Supreme Court gave the following additional guidance in *Iqbal*:
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than [legal] conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1950.

**A.      Breach of MTA**

Bush asserts in this claim that it is a third-party beneficiary of the MTA between Office Depot and Dynamex. Reading the allegations in the Amended Complaint and the supporting documentation as a whole, the Court understands Bush to allege that it is a third-party beneficiary of the Vehicle Asset provisions in certain Schedule A(s) to the MTA. Bush alleges that Office Depot had a duty pursuant to the Vehicle Asset provisions to buy back from Bush the Office Depot-branded vehicles that Bush had purchased from Office Depot and leased to Dynamex.

The Court has considered the dismissal arguments made by the parties in their briefs and at the hearing. Florida law is controlling on this claim because the MTA contains a Florida choice-of-law provision. Under Florida law, a third-party beneficiary need not be specifically named in a contract to assert rights thereunder. *See Shaffer v. Wells Fargo Guard Servs.*, 528 So. 2d 389, 390 (Fla. App. 1988); *Technicable Video Sys., Inc. v. Americable of Greater Miami, Ltd.*, 479 So. 2d 810, 812 (Fla. App. 1985.) A person is a third-party beneficiary if "the parties to the contract clearly express . . . an intent to primarily and directly benefit the third party or a class of persons to which that party claims to belong." *Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd.*, 647 So. 2d 1028, 1031 (Fla. App. 1994). Here Bush has alleged sufficient facts to state a plausible claim that it was the intended third-party beneficiary of the MTA. Likewise, it has pleaded that Office Depot breached the MTA and that Bush was damaged thereby. The Court concludes that Bush has stated this claim adequately to withstand a Rule 12(b)(6) motion.

**B.     Promissory Estoppel, Unjust Enrichment, and Fraudulent Inducement**

Bush pleads the promissory estoppel and unjust enrichment claims in the alternative to the breach of contract claims. Bush alleges that Office Depot made promises and representations to Bush to buy back the Office Depot-branded vehicles, that it relied on Office Depot's promises and representations by entering into the Office Depot Amendment to the Program Agreement, and that it was damaged by Office Depot's failure to buy back the vehicles. Office Depot moves for dismissal primarily on the basis that Bush cannot establish reasonable reliance as a matter of law.

The VPA between Bush and Office Depot is a fully-integrated contract by its terms and it contains the only obligations of the parties to each other. The VPA set forth the terms of the sale

of vehicles from Office Depot to Bush.  The VPA did not contain a buy-back provision obligating Office Depot to re-purchase the vehicles from Bush in any circumstances.  Because of the absence of a buy-back provision in the VPA, Office Depot asserts that Bush's reliance upon Office Depot's alleged non-contractual promises and representations was unreasonable as a matter of law.

Bush's promissory estoppel and unjust enrichment claims are sufficiently pleaded to meet the Rule 12(b)(6) standard.  Office Depot's argument predicated upon the VPA requires the Court to make determinations of fact not appropriate for resolution at the pleading stage.  Issues of reasonable reliance are not readily determined prior to discovery.  The Court will not dismiss Bush's promissory estoppel and unjust enrichment claims at this time.

A similar analysis applies to Bush's fraudulent inducement claim.  Bush alleges that Office Depot misled (fraudulently induced) Bush into entering into the Office Depot Amendment to the Program Agreement by representing that it would abide by the terms therein.  Stated differently, and taking as a whole the allegations in the Amended Complaint and the relevant documents, Bush alleges that Office Depot induced it into entering into the Office Depot Amendment to the Program Agreement by representing that Office Depot would buy back the Office Depot-branded vehicles in the event that the Program Agreement was terminated.  Bush has stated this claim with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure.  Additionally, for the reason set forth above, the fraudulent inducement claim does not fail at the pleading stage on the basis that Bush could not have reasonably relied upon Office Depot's alleged representations.

**C.     Fraud**

Bush alleges a fraud claim in addition to the fraudulent inducement claim. To the extent that Bush intended to assert a fraud claim based on facts independent of and separate from the fraudulent inducement claim, the fraud claim is not pleaded with the particularity required by Rule 9(b). Additionally, the fraud claim is barred under Florida and Ohio law. Under Florida law, "where parties freely enter a contract and the promisor fails to perform an obligation 'interwoven with the breach of contract,' the promisee's claim arises only in contract." *Gen. Elec. Co. v. Latin Am. Imports, S.A.*, 126 F. App'x 209, 212 (6th Cir. 2005) (applying Florida law and quoting *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1240 (Fla. 1996)). Bush's contention that Office Depot misrepresented or concealed its obligations necessarily is interwoven with Bush's contention that Office Depot assumed the duty to buy back vehicles from Bush in the MTA. Therefore, Bush's claim for fraud fails under Florida law.

In Ohio, "[t]he economic-loss rule generally prevents recovery in tort of damages for purely economic loss." *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, 106 Ohio St. 3d 412, 414, 835 N.E.2d 701, 704 (2005). The rule "prevents a party from recovering economic losses in tort that result from 'a breach of duties assumed only by agreement.'" *Onyx Envtl. Servs., LLC v. Maison*, 407 F. Supp. 2d 874, 879 (N.D. Ohio 2005) (quoting *Corporex Dev. & Constr. Mgmt.*, 106 Ohio St. 3d at 414). The injury or damages caused by the tortious conduct must be separate and distinct from the injury or damages caused by the breach of contract. *Med. Billing, Inc. v. Med. Mgmt. Sciences, Inc.*, 212 F.3d 332, 338 (6th Cir. 2000). To the extent that Bush alleges fraud separate from the fraudulent inducement, the damages it seeks for the fraud are purely economic. The claim therefore fails under Ohio law as well. For these reasons, the Court

will **DISMISS** Bush's fraud claim.[5]

### D. Tortious Interference

Bush alleges in the tortious interference claim that Office Depot interfered with or caused a breach of the contracts between Bush and Dynamex and between Bush and Dynamex drivers. It is not clear from the allegations in the Amended Complaint which facts support this claim. The only contract between Bush and Dynamex is the Program Agreement. Bush does not explain by what acts or in what manner Office Depot interfered with or caused a breach of that agreement.

Moreover, both Bush and Dynamex had the right to terminate the Program Agreement at any time with ninety days notice. Some cases have held that there can be no tortious interference with a contract that is terminable at will. *See Mitchell v. Mid-Ohio Emer. Servs., LLC*, No. 03-AP-981, 2004 WL 2803419, at *9 (Ohio App. Sept. 30, 2004); *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App. 3d 598, 612-13, 662 N.E.2d 1088 (1995). Office Depot's conduct could not be considered wrongful if it encouraged or solicited Dynamex to terminate an agreement it had the right to terminate at any time. Applied here, these cases instruct that Office Depot could not

---

[5] As to a fraudulent inducement claim, Florida law provides that "when the promisor makes a false promise 'extraneous to the contract,' which, rather than forming a term of performance, induces the promisee to enter the contract, then the [economic loss] rule does not bar his claim." *Gen. Elec. Co.*, 126 F. App'x at 213 (quoting *HTP, Ltd.*, 685 So. 2d at 1240); *see also Becherer v. Merrill Lynch, Pierce, Fenner, and Smith, Inc.*, 193 F.3d 415, 439 (6th Cir. 1999) (Kennedy, J., dissenting) (applying Florida law and stating that the economic loss rule bars fraud claims, but not true fraudulent inducement claims). Similarly, in Ohio, courts have held that claims for fraudulent inducement are not barred by the economic loss rule. *See Marine Direct v. Doughtery Marine, Inc.*, No. 2:06-cv-0100, 2007 WL 81842, at *2 (S.D. Ohio Jan. 8, 2007); *Onyx Envir. Servs.*, 407 F. Supp. 2d at 879. Therefore, Bush's claim that Office Depot fraudulently induced it into entering the Office Depot Amendment to the Program Agreement survives.

tortiously interfere with or cause the breach of a contract which Dynamex had the right to terminate at any time.  For these reasons, Bush has failed to state a facially plausible claim for relief under *Iqbal.  See* 129 S. Ct. at 1949.  The Court will **DISMISS** the tortious interference claim as well.

E.      **Civil Conspiracy**

Finally, Bush alleges that Office Depot conspired with Dynamex to deprive Bush of the expected benefits of the Program Agreement and the MTA.  "Under Ohio law, a civil conspiracy consists of four elements: (1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy."

*Hicks v. Bryan Med. Group, Inc.*, 287 F. Supp. 2d 795, 813 (N.D. Ohio 2003).  Office Depot moved for dismissal of this claim on the sole ground that the predicate tort claims failed.  However, the Court has held that Bush's fraudulent inducement, promissory estoppel, and unjust enrichment claims survive the Rule 12(b)(6) motion.  Accordingly, the Court holds that the civil conspiracy claim survives as well.

III.    **MOTION TO TRANSFER**

The Court next must determine whether to transfer the remaining claims to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a).  The transfer statute provides:  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  According to the notes following § 1404, subsection (a) "was drafted in accordance with the doctrine of forum non conveniens, permitting transfer to a more convenient forum, even

though the venue is proper." *Id.* note. "Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." *Van Dusen v. Barrack*, 376 U.S. 612, 645-46 (1964).

The moving party usually bears the burden of proving why a court should grant a transfer. *Kay v. Nat'l City Mortg. Co.*, 494 F. Supp. 2d 845, 849-50 (S.D. Ohio 2007); *Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp. 2d 941, 945 (S.D. Ohio 2002). Office Depot moves for the transfer primarily on the basis of the forum-selection and the choice-of-law provisions in the MTA. Bush claims to be a third-party beneficiary of the MTA. "The presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's [transfer] calculus." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). A forum-selection provision is relevant to the parties' choice of forum, the convenience of the parties, the public's interest in local adjudication. "[A] forum selection clause negates the presumption given to the plaintiff's choice of forum and requires the plaintiff to prove why enforcement and transfer is unreasonable under the circumstances." *Travelers Prop. Cas. Co. of Am. v. Centimark, Corp.*, No. 2:04-cv-0916, 2005 WL 1038842, at *4 (S.D. Ohio 2005).

Bush does not dispute that the MTA includes a forum-selection clause. Instead, it argues that it would be unjust to enforce the clause against it because, as a third-party beneficiary, it did not bargain for inclusion of the forum-selection provision. The Court cannot agree. Forum-selection provisions can be enforced against third-party beneficiaries. *See Woods v. Christensen Shipyards, Ltd.*, No. 04-61432-CIV, 2005 WL 5654643, at *4 (S.D. Fla. 2005); *Bohl v. Hauke*, 180 Ohio App. 3d 526, 533-34, 906 N.E.2d 450 (2009). Accordingly, the presence of the

Southern District of Florida forum-selection provision weighs strongly in favor of transfer. Bush bears the burden of establishing that the other transfer factors weigh against transfer, but it cannot meet that burden here. The Florida choice-of-law provisions in the MTA and in the VPA also weigh in favor of transfer. Bush argues that Ohio is a more convenient forum for it and its witnesses, but its contention is balanced out by Office Depot's assertion that Florida is more convenient for it and its witnesses.[6] In sum, Bush cannot establish that this is the more convenient forum. Accordingly, the Court will transfer this action to the Southern District of Florida.

**IV. CONCLUSION**

For the foregoing reasons, Defendant Office Depot, Inc.'s Motion to Dismiss (doc. 39) is **GRANTED IN PART**. The Court dismisses Bush's claims for fraud and tortious interference pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Defendant Office Depot, Inc.'s Motion to Sever Claims and Transfer Venue (doc. 40) is **GRANTED**. This case is **TRANSFERRED TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA**.

IT IS SO ORDERED.

                                                   s/Susan J. Dlott
                                                   Chief Judge Susan J. Dlott
                                                   United States District Court

---

[6] Neither party submitted any evidence to support their assertions as to convenience of the respective forums.